UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JAMES C. TATE | * | CIVIL ACTION |
| VERSUS | * | NO. 20-882 |
| UNITED STEEL WORKERS UNION LOCAL 8363 | * | MAG. J. CURRAULT |

### ORDER AND REASONS

Plaintiff James C. Tate ("Tate") filed this suit on March 13, 2020, alleging that Defendant United Steel Workers Union Local 8363 ("Union") refused to file his race-based grievance relating to his September 2017 retirement/termination from employment, choosing instead to file its own grievance on his behalf and then deciding not to arbitrate that grievance.  Plaintiff contends the Union's conduct violated Title VII, its duty of fair representation, and breached its obligations under its constitution.[1]  The Union filed its Answer on April 4, 2020, raising numerous affirmative defenses including statute of limitations, failure to exhaust administrative remedies and preemption.[2]  This matter was referred to a United States Magistrate Judge for all proceedings and entry of judgment in accordance with 28 U.S.C. § 636(c) upon the written consent of all parties.[3]

The Union filed a Motion for Summary Judgment seeking dismissal of Plaintiff's claims, which motion is currently pending before me in this matter.[4]  Plaintiff filed a "Motion to oppose dismissal" and a timely Opposition Memorandum to the Union's Motion for Summary Judgment.[5]

---

[1] ECF No. 1, at 3; No. 1-1.
[2] ECF No. 4, at 10.
[3] ECF No. 10.
[4] ECF No. 32.
[5] ECF Nos. 31; 35.

The Union sought leave and filed a Reply Memorandum.[6]  Neither party requested oral argument in accordance with Local Rule 78.1, and the Court agrees that oral argument is unnecessary.

Having considered the record, the submissions and arguments of the parties, and the applicable law, Defendant's motion is GRANTED for the reasons stated herein.

## I.     FACTUAL BACKGROUND

### A.  Plaintiff's Employment and Union Membership History

Plaintiff worked as a Production Operator at a petroleum refinery in Meraux, Louisiana (the "Meraux refinery"), from September 29, 1994 until September 1, 2017.[7]  Murphy Oil USA owned and operated the Meraux Refinery until the sale of that facility to Valero Services, Inc. ("Valero") in 2011.[8]  The Union has represented employees of the Meraux refinery continuously since before Plaintiff's employment, and Plaintiff was a Union member during most of his employment.[9]

During his union membership, Plaintiff volunteered as an Emergency Medical Technician, Emergency Response Team member, Hurricane Ride Out Team member, and Union benefits and insurance coordinator.[10]  In 2011, the Union President Gilmore asked Plaintiff to serve on the Union's Civil Rights Committee, but he refused.[11]  At one point, the Civil Rights Committee had two African American women on it.[12]  Plaintiff concedes that a Civil Rights Committee existed, but he asserts that it never functioned properly.[13]

---

[6] ECF No. 44.
[7] ECF No. 1-1, at 1; 4 ¶¶ 1-2, 37-42.
[8] ECF No. 1-1, at 1.
[9] *Id*.
[10] *Id*. at 1-2.
[11] ECF No. 32-12, at 6-8.
[12] ECF No.  32-11, at 18-20 (Tate Deposition at 60-62).
[13] *Id.*   at 14-20 (Tate Deposition at 56-62).

B.  **Relevant Disciplinary Incidents**

Plaintiff Tate and Jason Roberts (a white co-worker) had a particularly contentious relationship (e.g., making fun of one another's height, weight), but Plaintiff never filed a grievance.[14]  On May 2, 2017, Plaintiff gave Roberts unsolicited instructions regarding how to deal with a malfunctioning pump to which Roberts responded by saying "F*** you."[15]  When Plaintiff returned to work for his next shift, he asked whether Roberts had been disciplined and learned that no one reported the misconduct.[16]  In response, Plaintiff told Roberts:  "You got one more 'f*** you' to throw at me, and then I'm coming over there. . . . I'm going to come and punch you in your neck."[17]  The Company investigated a complaint that Plaintiff threatened Roberts, during which Plaintiff stated: "I didn't threaten[] him.  I said I promised him that if he continued to treat me the way he did, I was going to hurt him."[18]  The Company disciplined both Plaintiff and Roberts in connection with this incident, and because Tate had a prior discipline within three years of the incident, his discipline was probation and a final warning.[19]  Plaintiff did not ask the Union to file a grievance over that disciplinary action.[20]

On July 27, 2017, Plaintiff was working as chief operator and instructed another operator to increase the diesel pump flow to 20,000 to 21,000 barrels.  But the other operator mistakenly entered 2,000 to 2,100 barrels rather than 20,000 to 21,000.[21]  The Union contends that neither Plaintiff nor other employees noticed this mistake before an IT employee discovered it 75 minutes later, which resulted in unsellable product and a loss of approximately $37,000.[22]

---

[14] ECF No. 32-11,  at 53-55 (Tate Deposition at 178-80).
[15] *Id.* at 56-59 (Tate Deposition at 181-84).
[16] *Id.* at 59 (Tate Deposition at 184).
[17] *Id.* at 59-60 (Tate Deposition at 184-85).
[18] *Id.* at 60 (Tate Deposition, at 185).
[19] *Id.* at 63-64 (Tate Deposition at 195-96).
[20] *Id.* at 65 (Tate Deposition at 197).
[21] *Id.* at 73 (Tate Deposition at 207).
[22] ECF No. 32-1, at 9.

A month after this incident, on September 1, 2017, the Company's Human Resources Manager, Mia Randle, asked Plaintiff to arrive early for work at which time he was directed to the old training room.[23]  Plaintiff then met with three members of the Company's management and two Union representatives, David Levy and Kevin Kennedy.[24]  A member of the Company's management team informed Plaintiff that they no longer had faith in his ability to do his job, and he could choose either termination or retirement.[25]  Plaintiff spoke with the two Union representatives Levy and Kennedy who told him they could not tell him what to do, after which Plaintiff elected retirement.[26]

### C.  <u>Subsequent Union Actions</u>

On Tuesday, September 5, 2017, Plaintiff wrote a grievance alleging that he was terminated on the basis of race.  He brought the grievance to the plant, but he was not allowed on the property because he was no longer an employee.  The supervisor who refused to allow him on the property refused to take his grievance.  Plaintiff did not file his grievance with any Company employee or Union representative after being denied access to the plant.[27]  However, Union President Wayne Gilmore told Plaintiff that the Union would file a grievance on his behalf.[28]

On September 11, 2017, the Union sent a "Request for Information on Mr. James Tate" to the Company.[29]  On October 22, 2017, the Union filed a "step 3 grievance" for Plaintiff's "wrongful and un-just termination by the Company."[30]  In that grievance, the Union stated that it considered the Company's decision to be "capricious, determined by chance or impulse rather than

---

[23] ECF No. 32-11, at 78, 80 (Tate Deposition at 217, 219).
[24] *Id.* at 81-82 (Tate Deposition at 220, 222; ECF No. 1-1, at 6-7).
[25] *Id.* at 82, 85 (Tate Deposition at 222, 225); ECF No. 1-1, at 7.
[26] ECF No. 32-11, at 86-88 (Tate Deposition at 226-28); ECF Nos. 32-16 ¶ 2; 32-17.
[27] ECF No. 32-11, at 89-92 (Tate Deposition at 249-250, 253-54); ECF No. 32-2 ¶ 5.
[28] ECF No. 32-11, at 92 (Tate Deposition at 254).
[29] ECF No. 32-4.
[30] ECF No. 32-5.

by necessity or reason," and "prejudice and discriminatory."[31]   The Company held a third step meeting on August 9, 2018, and maintained, despite objections from Union representatives Gilmore and Kennedy, that Plaintiff had retired and had not been terminated.[32]   The Company denied the grievance on August 15, 2018, stating: "James Tate's employment was not terminated from Valero Meraux Refinery.  James Tate notified the company of his retirement and the effective date of September 1, 2017."[33]

On October 9, 2018, Gilmore sent a letter to Plaintiff informing him that his grievance had moved forward to arbitration.[34]   Later, on July 3, 2019, the Union informed Plaintiff that they would not arbitrate his case.[35]   The decision not to pursue arbitration was made by Union representative Marty Poché after he determined that the Union was not likely to succeed in arbitration due to Tate's resignation and retirement.[36]

## II.    PLAINTIFF'S CLAIMS AND THE UNION'S SUMMARY JUDGMENT MOTION

Plaintiff filed this suit against the Union claiming that it discriminated against him on the basis of race and subjected him to harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e.[37]   He contends that the Union breached its contractual obligations by failing to (a) hold regular meetings as required by its constitution,[38] (b) establish a Civil Rights

---

[31] *Id.*

[32] ECF No. 32-6.

[33] ECF No. 32-7.

[34] ECF No. 32-8.

[35] ECF No. 32-11, at 93 (Tate Deposition at 258); ECF No. 1-1, at 7.

[36] ECF No. 32-13 ¶3.

[37] ECF Nos. 1,;1-1.  Because Plaintiff is a *pro se* litigant, his complaint must be liberally construed.  *Coleman v. United States*, 912 F.3d 824, 828 (5th Cir. 2019) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (holding that pro se litigant's filings are to be "liberally construed" and held to less stringent standards than pleadings drafted by lawyers)). Although Plaintiff expressly relies upon the Uniform Commercial Code to support his breach of contract claim, his allegations suggest that the Union is alleged to have breached the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Worker International Union, AFL-CIO·CLC ("USW") Constitution as well as its duty of fair representation.  Accordingly, Plaintiff's UCC breach of contract claim will be construed as claims based on the USW Constitution and/or the Union's duty of fair representation.

[38] ECF Nos. 1-1, at 3; 32-11, at 100-01; 32-14, at 43 (Tate Deposition at 287).

Committee despite its knowledge of ongoing racial incidents at the Meraux refinery,[39] (c) respond to incidents of racial discrimination or harassment in the workplace in 2011 and 2015,[40] (d) take action in response to supervisor Mickey Pena's bullying and harassment of employees, without regard to race, from 2007 through 2011,[41] (e) address unsafe working conditions,[42] and (f) pursue arbitration of his wrongful termination complaint.[43] Although Plaintiff also asserts that his former employer subjected him to a hostile work environment and wrongfully terminated his employment,[44] he did not name his employer in this proceeding.

Defendant filed a Motion for Summary Judgment, arguing that there are no genuine disputes of material facts with respect to any of Plaintiff's claims.[45] It argues that Plaintiff's Title VII claims are all time barred, except his failure to arbitrate the grievance. With regard to that claim, the Union contends that the undisputed facts reflect that the decision not to arbitrate was based on Plaintiff's choice to retire, not any racial considerations.[46] In addition, the Union asserts that it did create a Civil Rights committee[47] and while it concedes up to three months have passed with a meeting,[48] it argues that Plaintiff cannot show that he suffered any damages as a result of the Union's breach of its constitution and any claims for breach of the duty of fair representation

---

[39] ECF Nos. 1-1, at 1, 2, 4-6; 32-11, at 14-20, 102 (Tate Deposition at 56-62).

[40] ECF Nos. 1-1, at 2-3; 1-2, at 4; 32-11, at 40-41, 45 (Tate Deposition at 135-36, 141); No. 32-18 ¶ 6.

[41] ECF Nos. 32-11, at 22-26, 85-87 (Tate Deposition at 80-84, 225-27); No. 32-18 ¶ 7.

[42] ECF Nos. 1-1, at 3, 5;  32-1, at 6-7; 32-11, at 51-52.

[43] ECF Nos. 1; 1-1.

[44] ECF No. 1-1, at 2.

[45] ECF No. 32-1.

[46] *Id.* at 12.

[47] Plaintiff concedes that the Union did create a committee but contends it never functioned properly. ECF No. 32-11, at 14-20 (Tate Deposition at 56-62). Recording secretary Kennedy acted as the president of the Civil Rights Committee, and Kennedy confirmed difficulty finding members to volunteer to serve on the board of the Civil Rights Committee. ECF No. 32-15, at 3, 4-6.

[48] The Union asserts that it attempted to hold meetings, but had ongoing difficulties obtaining the required quorum. ECF Nos. 32-15, at 7-8;  44-2, at 2.

are time barred.[49]   The Union also argues that Plaintiff has failed to raise any genuine issue of material fact and his opposition fails to show that it is not entitled to judgment as a matter of law.[50]

In his Opposition, Plaintiff reiterates his claims.[51]   He also argues that the Union has received positive results for white union members in post-termination proceedings, but he does not provide specific details or submit any evidence to support that assertion.[52]   Plaintiff does not respond to the Union's statement of material facts or provide evidence to create a material fact dispute.  In response to Defendant's Reply, Plaintiff re-asserts his claim for breach of duty of fair representation under section 301 of the LMRA.[53]

## III.   APPLICABLE LAW

### A.  Summary Judgment Standard

Rule 56 mandates that summary judgment be issued if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.[54] The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions of file, and affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.[55]   Summary judgment is not precluded by disputes over facts that are not "material"[56] and disputes that are not "genuine."[57]   "When assessing whether a dispute

---

[49] ECF No. 32-1, at 12.

[50] ECF Nos. 43; 44.

[51] ECF Nos. 31; 35.

[52] ECF No. 35, at 2.

[53] ECF No. 45, at 1.

[54] Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).

[55] *Celotex*, 477 U.S.at 323.

[56] A fact is material if its resolution could affect the outcome of the action.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986); *see also Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P*., 627 F.3d 134, 138 (5th Cir. 2010) (citation omitted).

[57] A genuine dispute of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248; *see also Westfall v. Luna*, 903 F.3d 534, 546 (5th Cir. 2018) (same) (citations omitted).

to any material fact exists, [the Court] consider[s] all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[58]  All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[59]  Thus, the court must resolve factual controversies in favor of the nonmoving party "only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[60]

When the moving party carries its initial burden, the burden then falls upon the nonmoving party to demonstrate the existence of a genuine issue of a material fact.[61]  If the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial.[62]  Summary judgment is thus proper if the party opposing the motion fails to establish an essential element of his case.[63]  Once a proper motion has been made, the non-moving party may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing the existence of a genuine issue of fact for trial.[64]

Only evidence—not argument, not facts in the complaint—will satisfy the burden.[65] Unsworn pleadings, memoranda or the like are not competent summary judgment evidence.[66]

---

[58] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008) (citations omitted).

[59] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (quoting 10B CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2738 (2d ed. 1983)); *see also Little*, 37 F.3d at 1075.

[60] *Antoine v. First Student, Inc.*, 713 F.3d 824, 830 (5th Cir. 2013) (internal quotation marks and citation omitted).

[61] *Fields v. City of New Orleans*, No. 09-4276, 2012 WL 92512, at *5 (E.D. La. Jan. 11, 2012) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)).

[62] *Celotex*, 477 U.S. at 322–25; *see also Moody v. Jefferson Par. Sch. Bd.*, 2 F.3d 604, 606 (5th Cir. 1993); *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir. 1991).

[63] *See Celotex*, 477 U.S. at 322-23.

[64] *Id.* at 321 n.3.

[65] *Solo Serve Corp. v. Westowne Assocs.*, 929 F.2d 160, 164 (5th Cir. 1991).

[66] *Larry v. White*, 929 F.2d 206, 211 n.12 (5th Cir. 1991).

Summary judgment affidavits must be made on personal knowledge, set forth facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated therein.[67]   Statements made by affiants without personal knowledge are not capable of being presented in admissible form at trial.[68]   Summary judgment affidavits need not, however, use any magic language, provided the affiant's personal knowledge and competence are reasonably inferred from their positions and the nature of their participation in the matters to which they swore.[69]   Likewise, generalized testimony of a party's subjective belief is insufficient to create an issue for trial when the beliefs are not substantiated.[70]

Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.[71]   "If the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate.[72]

---

[67] Fed. R. Civ. P. 56(c)(4).

[68] *D'Onofrio v. Vacation Publ'ns, Inc*., 888 F.3d 197, 208 (5th 2018) (citations omitted); *see also McWhirter v. AAA Life Ins. Co.*, 622 F. App'x 364, 366 (5th Cir. 2015) (holding that an affidavit based on witness' belief rather than personal knowledge is insufficient summary judgment evidence); *Meadaa v. K.A.P. Enters., L.L.C*., 756 F.3d 875, 881 (5th Cir. 2014) (finding that a summary judgment affidavit does not meet the personal knowledge requirement simply because the affiant states that her conclusions are based on personal knowledge. Rather, the affiant must provide sufficient information to allow the court to conclude that the affiant's assertions are indeed based on personal knowledge); *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992) (holding that conclusory assertions in affidavit could not be relied upon in summary judgment proceedings).

[69] *In re Green*, 968 F.3d 516, 523-24 (5th Cir. 2020) (citations omitted) (noting personal knowledge may be inferred based on affiant's "sphere of responsibility"); *DIRECTV, Inc. v. Budden*, 420 F.3d 521, 529–30 (5th Cir. 2005) (inferring personal knowledge based on finding that testimony fell within affiant's "sphere of responsibility").

[70] *Bickerstaff v. Whitney Nat'l Bank*, No. 96-30231, 1996 WL 595654, at *3 (5th Cir. Sept. 20, 1996) (summary calendar); *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 654 (5th Cir. 2004); *Armendariz v. Pinkerton Tobacco Co*., 58 F.3d 144, 152-53 (5th Cir. 1995).

[71] *See Bickerstaff*, 1996 WL 595654, at *2; *see also EEOC v. Simbaki, Ltd*., 767 F.3d 475, 481 (5th Cir. 2014) (citation omitted) ("No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party.").

[72] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (citations omitted).

### B. **Title VII Discrimination**

Title VII of the Civil Rights Act of 1964 prohibits covered employers from discriminating against any individual with respect to "terms, conditions, or privileges of employment, because of such individual's race."[73]   Before pursuing a claim in federal court, a plaintiff must exhaust administrative remedies by timely filing a charge of discrimination with the EEOC and receiving a statutory notice of right to sue.[74]   For discrete acts of discrimination,[75]   the EEOC charge must be filed within 180 days after the alleged unlawful employment practice,[76] or 300 days in a "deferral state" such as Louisiana.[77]   Claims for hostile work environment, however, are not time barred "so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period."[78]   A Title VII claim is time barred if not filed within the applicable time limit.[79]

A Title VII plaintiff carries the initial burden of establishing a *prima facie* case of discrimination.[80]   To prove race discrimination under Title VII, a plaintiff may submit either direct or circumstantial evidence.[81]   "Direct evidence is evidence, which if believed, proves the fact in

---

[73] 42 U.S.C. § 2000e-2(a)(1).

[74] *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378-79 (5th Cir. 2002) (citation omitted); *accord Harlan v. Time Warner Cable, Inc.*, No. 07-1267, 2008 WL 11515580, at *2 (W.D. La. June 17, 2008); *see also T.B. ex rel. Bell v. Nw. Indep. Sch. Dist.*, 980 F.3d 1047, 1050 n.2 (5th Cir. 2020) ("Title VII's administrative exhaustion requirement is not jurisdictional but is, instead, a mandatory claim-processing rule.") (citing *Fort Bend Cty., Tex. v. Davis*, 139 S. Ct. 1843, 1851 (2019)).

[75] *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110, 113 (2002).

[76] 42 U.S.C. § 2000e-5(e).

[77] *Conner v. La. Dep't of Health and Hosps.*, 247 F. App'x 480, 481 (5th Cir. 2007) (citing 42 U.S.C. § 200e-5(e); La. Stat. Ann. § 51:2231, *et seq.*); *see Morgan*, 536 U.S. at 109 (2002). "[W]hen a claimant submits an EEOC charge and, pursuant to a work-sharing agreement, the EEOC accepts it on behalf of a deferral state, the claimant is deemed to have initially instituted proceedings with the state agency and the 300–day period is triggered." *Connor*, 247 F. App'x at 481 (citations omitted).

[78] *Morgan*, 536 U.S. at 122.

[79] *Id.*. at 109.

[80] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

[81] *Jones v. Overnite Transp. Co.*, 212 F. App'x 268, 272 (5th Cir. 2006) (citing *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)).

question without inference or presumption."[82]  Direct evidence "includes any statement or written document showing a discriminatory motive on its face."[83]

Employment discrimination plaintiffs often rely on indirect evidence of discrimination using the burden-shifting framework of *McDonnell Douglas*.[84]  This requires that plaintiff initially establish a prima facie case by carrying the summary judgment burden to show genuine disputes of material fact over whether he (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside her protected group, was treated less favorably than other similarly situated employees outside the protected group, or was otherwise discharged because of her protected trait.[85]  The Fifth Circuit adopted a modified *McDonnell Douglas* test for claims of discrimination by a union.[86]  For claims involving a union, the plaintiff must establish that (1) he is a member of a protected class, (2) he was subject to an adverse union action, and (3) he was treated less favorably by the union than employees of different races.[87]

To establish that he was treated less favorably than similarly situated union members, Plaintiff must proffer a comparator, a union member who is a member of a different race who was treated more favorably "under nearly identical circumstances," which is established when the members' conduct and circumstances are nearly identical.[88]  "The 'nearly identical' standard,

---

[82] *Reilly v. TXU Corp.*, 271 F. App'x 375, 379 (5th Cir. 2008) (citing *Jones v. Robinson Prop. Grp.*, 427 F.3d 987, 992 (5th Cir. 2005)).

[83] *Overnite Transp. Co.*, 212 F. App'x at 272 (quoting *Fierros v. Tex. Dep't of Health*, 274 F.3d 187, 195 (5th Cir. 2001), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003)).

[84] *McDonnell Douglas Corp.*,  411 U.S.at 802–03.

[85] *E.g.*, *Roberson-King v. La. Workforce Comm'n*, 904 F.3d 377, 381 (5th Cir. 2018); *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007); *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009); *see also Nguyen v. Univ. of Texas Sch. of Law*, 542 F. App'x 320, 323 (5th Cir. 2013).

[86] *Wesley v. Gen. Drivers Local 745*, 660 F.3d 211, 214 (5th Cir. 2011).

[87] *Id.* (citing *Stalcup v. Commc'n Workers of Am.*, 44 F. App'x 654 (5th Cir. 2002)).

[88] *See Dotson v. Gulf*, No. Civ.A. H-05-0106, 2006 WL 44071, at *7 (S.D. Tex. Jan. 9, 2006) (citing *Krystek v. Univ. of S. Miss.*, 164 F.3d 251, 257 (5th Cir. 1999) (holding non-tenure track professor is not similarly situated to a tenure track professor)); *Lee*, 574 F.3d at 260 ("[W]e require that an employee who proffers a fellow employee demonstrate that the employment actions at issue were taken under 'under nearly identical circumstances.'" (citations omitted)).

when applied at the *McDonnell Douglas* pretext stage is a stringent standard – employees with different responsibilities, different supervisors, different capabilities, different work rule violations, or different disciplinary records are not considered to be 'nearly identical.'"[89]

When the defendant satisfies its burden of production by articulating a legitimate, nondiscriminatory reason for its decision, the presumption of discrimination "simply drops out of the picture" and plaintiff must prove that the defendant intentionally discriminated against him because of his protected characteristic.[90]   A plaintiff may carry that burden by proving by a preponderance of the evidence that the defendant's proffered reasons were not true reasons, but were "a pretext for discrimination, or that a 'motivating factor' of the employment decision was the plaintiff's protected characteristic."[91] The issue at the pretext stage is not whether the stated reason was actually correct or fair, but whether the decisionmakers honestly believed the reason.[92] A plaintiff's *prima facie* case, combined with sufficient evidence to find that the asserted justification is false, may permit the trier of fact to conclude there has been unlawful discrimination.[93]   A plaintiff is not, however, relieved of his burden to present evidence that will permit a rational factfinder to infer intentional discrimination.[94]

---

[89] *Dotson,* 2006 WL 44071, at *7 (citing *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 514-15 (5th Cir. 2001)).

[90] *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510–11 (1993) (citations omitted).

[91] *Sacchetti v. Optiv Sec., Inc*., 819 F. App'x 251, 253-54 (5th Cir. 2020) (citing *Rogers v. Pearland Indep. Sch. Dist*., 827 F.3d 403, 408 (5th Cir. 2016) (quoting *McDonnell Douglas Corp*., 411 U.S. at 802))

[92] *Harville v. City of Houston*, 945 F.3d 870, 877 (5th Cir. 2020) (citing *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 899 (5th Cir. 2002) ("The issue at the pretext stage is whether Appellee's reason, even if incorrect, was the real reason for Appellant's termination.")); *Goudeau v. Nat'l Oilwell Varco, L.P*., 793 F.3d 470, 476 (5th Cir. 2015) (citation omitted); *Harris v. Double G. Coatings, Inc*., No. 96-60485, 1997 WL 255619, at *2 n.4, *7 (5th Cir. May 5, 1997) (citations omitted).

[93] *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000); *St. Mary's Honor Ctr.*, 509 U.S. at 511 ; *see also Williams v. Waste Mgmt., Inc*., 818 F. App'x 315, 319 (5th Cir. 2020).

[94] *Harville*, 945 F.3d at 877 & n.26 (citing *Reeves*, 530 U.S. at 153 (noting that the "ultimate question" in cases alleging employment discrimination "is whether the plaintiff was the victim of intentional discrimination" and reminding that "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff") (internal quotation marks and alterations omitted)).

Even in the face of pretext, when no rational factfinder could conclude that the action was discriminatory, such as when the record conclusively reveals some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination occurred, summary judgment will be proper.[95]  The court should not weigh the wisdom of particular decisions nor question every management decision and work assignment.[96] The single issue is whether the decision was motivated by discrimination.[97]

## C.  The Union's Constitutional Obligations and Duty of Fair Representation

Section 9(a) of the National Labor Relations Act ("NLRA") implies a duty of fair representation, which requires the union "'to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct.'"[98]  "A breach of fair duty occurs only when the union's conduct is 'arbitrary, discriminatory, or in bad faith.'"[99]  "Neither negligence nor mistake in judgment is enough to support a claim that the union acted in an arbitrary or perfunctory manner.  A claim that a union acted 'perfunctorily' requires a demonstration that the union ignored the grievance, inexplicably failed to take some required step, or gave the grievance merely cursory attention."[100]

The union constitution is considered a "contract between two unions" – the international union and the local chapter – and individual union members "are often the beneficiaries of

---

[95] *Id.* at 876–77 (citations omitted).
[96] *Brown v. SCF Waxler Marine, LLC*, No. 19-12398, 2021 WL 199534, at *4 (E.D. La. Jan. 20, 2021) ("[T]he Court 'does not sit as a super-personnel department that reexamines an entity's business decisions.'" (citing *Dale v. Chi. Trib. Co.*, 797 F.2d 458, 646 (7th Cir. 1986))).
[97] *See McVille v. Inter-Comty. Healthcare, Inc.*, 460 F. App'x 353, 355 (5th Cir. 2012) (citing *Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 781 (8th Cir. 1995); *Deines v. Tex. Dep't of Protective & Reg. Servs.*, 164 F.3d 277, 281 (5th Cir. 1999)).
[98] *Carr v. Air Line Pilots Ass'n, Int'l*, 866 F.3d 597, 601 (5th Cir. 2017) (footnote omitted); *see also Steele v. Louisville and Nashville R.R. Co.*, 323 U.S. 192, 207 (1994).
[99] *Carr*, 866 F.3d at 602 (footnote omitted).
[100] *Lowrey v. Exxon Corp.*, 812 F. Supp. 644, 650 (M.D. La. 1993).

provisions of collective-bargaining agreements."[101]  In *Wooddell v. International Brotherhood of Electrical Workers, Local 71*, the Supreme Court held that an individual union member may pursue a claim for breach of the union constitution under § 301(a) of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185(a).[102]  A state law tort claim or claim for breach of contract that requires consultation of a collective bargaining agreement or union constitution, however, is preempted and must be addressed under § 301 of the LMRA.[103]

Unfair labor practice claims against the union are subject to a six-month statute of limitations under § 10(b) of the NLRA.  That six-month limitation period, however, does not apply to § 301 actions.  Rather, the Fifth Circuit has relied on state law to apply Louisiana's ten-year limitation period to § 301 claims against a union.[104]

## IV.  **ANALYSIS**

### A.  **Discrimination on the Basis of Race Under Title VII**

#### 1.  Most of Plaintiff's Asserted Race-Based Claims are Time-Barred

Although Plaintiff has alleged that his employer created a hostile environment, he does not allege, or present any evidence, that the union created a hostile work environment.  Rather, his

---

[101] *Wooddell v. Int'l Brotherhood of Elec. Workers, Local 71*, 502 U.S. 93, 100-01 (1991) (citing *Plumbers and Pipefitters v. Plumbers and Pipefitters, Local 334*, 452 U.S. 615, 624 (1981)).

[102] *Id.*

[103] "Preemption occurs when a decision on the state claim is inextricably intertwined with consideration of the terms of the labor contract or when the application of state law to a dispute requires interpretation of the collective-bargaining agreement."  *Thomas v. LTV Corp.*, 39 F.3d 611, 616-17 (5th Cir. 1994) (citing *Lingle v. Norge Div., Magic Chef, Inc.*, 486 U.S. 399 (1988); *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213 (1985)); *see also United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Indus. v. United Ass'n of Journeymen & Apprentices*, 452 U.S. 615, 627 (1981) (holding that union constitutions are contracts within section 301 of the LMRA).

[104] *Edwards v. Sea-Land Serv., Inc.*, 678 F.2d 1276, 1285-86 (5th Cir. 1982), *vacated on other grounds sub nom. Int'l Bhd. Of Teamsters v. Edwards*, 462 U.S. 1127 (1983) (citing *Auto Workers v. Hoosier Cardinal Corp.*, 383 U.S. 696, 704-05 (1966)) ("[S]ince no federal provision governs, we hold that the timeliness of a [§] 301 suit, such as the present one, is to be determined, as a matter of federal law, by reference to the appropriate state statute of limitations"); *Martin v. Dist. No. 1 – Marine Eng'gs' Beneficial Ass'n*, No. 93-2953, 1994 WL 34044, at *8 (E.D. La. Feb. 2, 1994) (applying La. Civ. Code art. 3499).

claims against the union are considered "discrete discriminatory acts" that must be analyzed independently for purposes of assessing whether same are time-barred.[105]

While neither party submitted a copy of Plaintiff's EEOC charge, Plaintiff attached his Notice of Right to Sue, which is dated February 28, 2020, and Defendants assert that the Plaintiff filed his EEOC charge on February 26, 2020. ECF No. 1-2; ECF No. 32-1, at 14. Based on these dates, any claim based on events that occurred before May 2, 2019 (i.e., 300 days before the February 26, 2020 EEOC charge) are time-barred.

Plaintiff contends that the Union failed to respond to his complaints of Carlin's racial prejudice and Pena's harassment. Plaintiff has not identified any white union member for whom the Union filed grievances after similar harassment in the workplace.[106] But more significantly, the Carlin incident occurred in 2015, and the Pena's harassment occurred between 2007 and 2011.[107] Any Title VII claims based on discrete events occurring, or a period of harassment ending, before May 2, 2019, are time barred. As these dates are well before May 2, 2019, Plaintiff's claims based on these events are time-barred.

2. Plaintiff's Non-Time Barred Claims

Plaintiff's Title VII claims stemming from the Union's refusal to arbitrate are not time barred. Plaintiff learned that the Union was withdrawing its grievance and would not proceed to arbitration on July, 3, 2019, and Plaintiff timely filed his EEOC Charge within 300 days.

With respect to his claims based on events arising after May 2, 2019, Plaintiff has not presented any direct evidence of discrimination.[108] He must therefore rely on *McDonnell Douglas*.

---

[105] *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).
[106] *See Wesley v. Gen. Drivers*, 660 F.3d 211, 215-16 (5th Cir. 2011) (citing *Donaldson v. Taylor Prods. Div. of Tecumseh Prods. Co.*, 620 F.2d 115, 159 (7th Cir. 1980) (holding that a union member failed to state a claim for racial discrimination by the union when he "failed to produce a scintilla of evidence that grievances of similarly situated white employees were treated differently.")).
[107] ECF No. 32-11, at 22-26, 85-87 (Tate Deposition at 80-84, 225-27); ECF No. 32-18 ¶ 7.
[108] *See Reilly v. TXU Corp.*, 271 F. App'x 375, 379 (5th Cir. 2008).

Plaintiff is an African American, so he satisfies the first factor because he falls within a protected class.[109]  Although Tate alleges that the Union refused to assert a race discrimination grievance and/or refused to arbitrate his grievance based on race,[110] he offers no evidence to support those assertions.

Plaintiff does proffer three potential comparators whom he claims were treated differently. Plaintiff claims that Lindsey Bruno and Anthony Pohlmann, both white men, stated retirement dates and later changed them.[111]  While it appears as though the Company (not the Union) allowed Bruno and Polhman to change their retirement dates before their initially-selected retirement dates, there is no evidence that Union intervened on their behalf with regard to that change.[112]  Without any evidence that the Union acted on behalf of either Bruno or Pohlmann, Plaintiff fails to establish that either of these men are similarly situated to him in nearly identical circumstances.[113]  The third identified employee, L.J. Lionnet, is a white man who Plaintiff asserts was also forced to choose retirement rather than termination.[114]  Although Plaintiff identifies Lionnet as a comparator, he admittedly has no knowledge about whether the Union took any post-termination action on Lionnet's behalf.  *Id.* at 98.  Accordingly, Plaintiff has not established that Lionnet is similarly situated in nearly identical circumstances.[115]

Plaintiff also generally asserts that the Union has only gained favorable post-termination outcomes for white members and "has never won reinstatement of a black union member after termination even for minor occurrences."  ECF No. 31, at 2.  Although making that generalized

---

[109] *Lyles v. Tex. Alcohol Beverage Comm'n*, 379 F. App'x 380, 383 (5th Cir. 2010).

[110] ECF Nos. 32-11, at 48; 31, at 2; 35, at 2.

[111] ECF Nos. 32-18 ¶¶ 2-3; 32-2 ¶ 13.

[112] *See* ECF No. 32-12, at 12.

[113] *See Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (2009) ("[W]e require that an employee who proffers a fellow employee as a comparator demonstrate that the *employment actions* at issue were taken 'under nearly identical circumstances.'" (emphasis added) (citations omitted)).

[114] ECF No. 32-11, at 97-98 (Tate Deposition at 281-82).

[115] *See Dotson v. Gulf*, No. H-05-0106, 2006 WL 44071, at *7 (S.D. Tex. Jan. 9, 2006) (citations omitted).

assertion, Plaintiff fails to identify any similarly situated employee in nearly identical circumstances that was treated differently than him.  Indeed, Plaintiff makes no effort to show how he was similarly situated to any unnamed white union member who allegedly received favorable outcomes as a result of the Union's representation, the circumstances underlying the alleged representation by the Union, or whether these events even involved the same work rules or retirement issues as in his case.  Therefore, he fails to show that these unnamed white union members are proper comparators.[116]

In short, Plaintiff fails to establish that he was treated less favorably than any other similarly situated union member in nearly identical circumstances.  Summary judgment must be granted dismissing Plaintiff's non-time barred Title VII claims.

## 2.  Breach of Constitution/Duty of Fair Representation

The USW Constitution requires the Union to hold meetings at least quarterly and to establish a Civil Rights Committee.  ECF No. 32-14, at 43, 46.  Plaintiff asserts breach of contract claims, which may be considered claims that the Union breached the USW Constitution.  Specifically, Plaintiff alleges that the Union breached its duties under the constitution by failing to establish a Civil Rights Committee and hold regular union meetings.  ECF No. 1-1; ECF No. 32-11, at 12-20.  He complains that the Union's failure to establish a Civil Rights Committee in light of racially-based disparate treatment of union members following Hurricane Katrina is a breach of the USW Constitution.  ECF No. 32-18 ¶ 6.  He also alleges that the Union breached its constitutional obligations with regard to housing of employees after Hurricane Katrina.  *Id.*  In asserting that the Union failed to establish a Civil Rights Committee, Plaintiff admits that the

---

[116] *Marsh v. Methodist Hosp. of Dallas*, No. 3:11-CV-00537-F, 2012 WL 12882103, at *9 (N.D. Tex. Aug. 27, 2012) (holding that the plaintiff failed to establish a *prima facie* case for Title VII discrimination when she made no attempt to show that she was similarly situated to a comparator who drew a dissimilar employment action under nearly identical circumstances).

Union created a Civil Rights Committee, but asserts that the committee never gained a large enough membership to function properly.  ECF No. 32-11, at 14-20.  At one point there were two African American women on the Civil Rights Committee, Nancy Smith and Annette Hill, but Plaintiff claimed that even with the two volunteers, the committee did not meet the USW Constitution's requirements.  *Id.* at 19.

Plaintiff, as a former union member, has standing to bring a claim for breach of the USW Constitution under § 301 of the LMRA.[117]  Although he does not cite § 301, he invokes the USW Constitution, which preempts any potential state law claims.[118]  Because Plaintiff's breach of contract claim must fall under § 301 of the LMRA and it meets the exceptions to § 10(b) of the NLRA, the appropriate statute of limitations is Louisiana's ten-year prescriptive period governing contract claims.[119]  La. Civ. Code art. 3499.  Plaintiff filed suit on March 13, 2020 (ECF No. 1).  Therefore, any claim for breach of the USW Constitution based on events occurring after March 13, 2010 are timely, but claims based on events before that date are time barred.

With regard to Plaintiff's claims that the Union failed to establish a Civil Rights Committee and breached its obligations with regard to housing of employees after Hurricane Katrina, these alleged breaches occurred in 2005 and 2006.  Accordingly, any claim based on those alleged breaches is time barred.  The Union concedes that it has gone three months without holding a meeting due to the inability to obtain the quorum necessary, but argues that it attempts to hold monthly meetings.  ECF No. 32-15, at 7-8; ECF No. 44-2, at 2.  Plaintiff does not allege that the lack of Union meetings had any impact on his termination.  ECF No. 32-11, at 100.  Further,

---

[117] *Wooddell v. Int'l Bhd. of Elec. Workers, Local 71*, 502 U.S. 93, 101 (1991).
[118] *See Thomas v. LTV Corp.*, 39 F.3d 611, 616-17 (5th Cir. 1994) (citing *Lingle v. Norge Div., Magic Chef, Inc.*, 486 U.S. 399 (1988); *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213 (1985)).
[119] *Martin v. Dist. No. 1 – Marine Eng'gs' Beneficial Ass'n*, No. 93-2953, 1994 WL 34044, at *8 (E.D. La. Feb. 2, 1994).

Plaintiff has not alleged any financial harm resulting from the Union's failure to establish a Civil Rights Committee or to hold meetings, and injunctive relief is not proper because there is no real and immediate threat of repeated injury. [120]  *See City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983).

### C.  Breach of Duty of Fair Representation

Plaintiff's allegations that the Union failed to file grievances on several occasions and did nothing to address numerous safety issues at the Meraux Refinery constitute claims for breach of the Union's duty of fair representation because, although Plaintiff cites the USW Constitution, he actually invokes the collective bargaining agreement ("CBA").[121]  As these claims invoke the CBA, the claims fall under the LMRA.[122]  But § 301 of the LMRA provides an employee with a federal cause of action against his *employer*, not the Union, for breach of a collective bargaining agreement.[123]

A claim that the Union has breached its duty of fair representation is an unfair labor practice under §§ 8(b) and 10(b) of the NLRA, 29 U.S.C. §§ 158(b), 160(b).[124]  As a result, § 10(b)'s six-month statute of limitations governs.[125]

---

[120]*See Turner Indus. Grp., LLC v. Int'l Union of Operating Eng'gs*, No. H-13-0456, 2015 WL 1737286, at *16 (S.D. Tex. Apr. 16, 2015) (holding that the aggrieved party in a section 301 suit bears the burden of proving what actual losses were suffered as a result of the breach); *see also Willis v. San Antonio ISD*, SA-16-CA-00887-ESC, 2017 WL 3470944, at *4 (W.D. Tex. Aug. 11, 2017) ("Although courts are more lenient with *pro se* plaintiffs than attorneys, pro se plaintiffs must still comply with the Federal Rules of Civil Procedure by presenting competent summary judgment evidence that demonstrates a genuine issue of material fact." (citation omitted)).

[121] ECF Nos. 32-3; 45, at 1.

[122] ECF No. 1-1, at 7; *Richardson v. United Steelworks of Am*., 864 F.2d 1162, 1168-69 (5th Cir. 1989).

[123] *Florence v. Frank*, 774 F. Supp. 1054, 1063 (N.D. Tex. 1991) (emphasis added) (citing *Bache v. Am. Tel. & Tel.*, 840 F.2d 283, 287 (5th Cir. 1998)); *accord Duriso v. W. Gulf Mar. Ass'n*, No. 1:15-CV-411, 2017 WL 6403033, at *4 (E.D. Tex. Aug. 11, 2017) (citing *Waldron v. Boeing Co.*, 388 F.3d 591, 593 (8th Cir. 2004) (citing *Smith v. Evening News Ass'n*, 371 U.S. 195, 200 (1962)); *Smith v. Kerrville Bus Co., Inc.*, 748 F.2d 1049, 1052 (5th Cir. 1984); *Toney v. IC Corp.*, No. 4:05CV000929, 2006 WL 3759528, at *3 (E.D. Ark. Dec. 18, 2006))).

[124] *Vaca v. Sipes*, 386 U.S. 171, 177-78 (1967) (citing *Miranda Fuel Co.*, 140 N.L.R.B. 181, 185 (1962)).

[125] *DelCostello v. Int'l Broth. of Teamsters*, 462 U.S. 151, 169 (1983); *Richardson*, 864 F.2d at 1167 (5th Cir. 1989) (citations omitted).

Plaintiff filed suit on March 13, 2020.  Therefore, any claims arising before September 13, 2019 are time barred.  Plaintiff's claim based on his forced retirement occurred on September 1, 2017, and Plaintiff learned in July 2019 that the Union would not arbitrate his claims.[126]  As a result, any claim based on the Union's breach of duty of fair representation during the course of Plaintiff's employment and union membership, as well as claims relating to the Union's refusal to arbitrate his post-termination grievance, are time barred.

## V.    CONCLUSION

While the Court is sympathetic to Plaintiff's issues with both his former employer, which has not been named in this suit, and the Union, the law mandates that summary judgment be granted under the facts of this case.  Plaintiff's claims that the Union breached its duty of fair representation and most of his Title VII claims are time barred as a matter of law.[127]  With regard to the non-time barred, contract-based claims, even construing his pleadings liberally and accepting his unsworn assertions as sufficient to create a genuine dispute of material fact, Plaintiff fails to establish that he suffered any damage from the Union's failure to establish a Civil Rights Committee or regularly hold monthly meetings.  Further, with regard to his non-time barred Title VII claims, Plaintiff has not presented admissible evidence to establish a prima facie case or even identified a proper comparator to support a finding that white union members were treated more favorably to him in nearly identical circumstances.  In contrast, the Union has offered evidence of its legitimate business reasons, shifting the burden back to Plaintiff.  Plaintiff has not met this burden to establish pretext.

---

[126] ECF No. 1-1, at 6-7.

[127] Though he did not make the claim in his Complaint, Plaintiff may have a claim under 42 U.S.C. § 1981, which provides him with a one-year statute of limitations based in La. Civ. Code Ann. Art. 3492.  *Mitchell v. Crescent River Port Pilots Ass'n*, 265 F. App'x. 363, 367-38 (applying Louisiana's one-year statute of limitations in a § 1981 suit. Even with the additional time, Plaintiff's claims that are time-barred under the 300-day Title VII window are also time-barred under the one-year statute of limitations applicable to § 1981 claims.

Accordingly, for the foregoing reasons,

IT IS ORDERED that Defendant's Motion for Summary Judgment (ECF No. 32) is GRANTED.

New Orleans, Louisiana, this 16th day of August, 2021.

DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE